## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**COINDELL BRYANT**                                                        **CIVIL ACTION**

**VERSUS**                                                                          **NO. 07-1409**

**JEFFERY E. TRAVIS**                                                   **SECTION:  "A"(3)**

## REPORT AND RECOMMENDATION

Plaintiff, Coindell Bryant, a state prisoner, filed this *pro se* and *in forma pauperis* complaint, against Jeffery E. Travis, the warden of the Rayburn Correctional Center.  Plaintiff claims that his right to privacy is being violated by the use of video surveillance cameras within the prison.

This Court is statutorily mandated to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>  (i) is frivolous or malicious;
>  (ii) fails to state a claim on which relief may be granted; or
>  (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of the complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Broadly reading plaintiff's complaint,[1] the Court finds that plaintiff's complaint should be dismissed as frivolous.

Plaintiff is a convicted prisoner incarcerated at the Rayburn Correctional Center in Angie, Louisiana. He states that he was twice charged with disciplinary infractions based on evidence gathered by the use of the video surveillance cameras at the prison. He alleges that use of the video surveillance cameras violates his right to privacy.

---

[1] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

The law is clear:  at best, convicted criminals retain only "very minimal" privacy rights during their incarceration.  Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).  Indeed, the United States Supreme Court has noted that loss of privacy is an inherent incident of confinement.  Hudson v. Palmer, 468 U.S. 517, 528 (1984).   The Supreme Court observed that curtailment of privacy rights in prisons is required due to the very traits of the population they house:

> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others. ...
>
> Within this volatile "community," prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors.  They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves.  They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize.  In addition to these monumental tasks, it is incumbent upon these officials at the same time to maintain as sanitary an environment for the inmates as feasible, given the difficulties of the circumstances.

Id. at 526-27.  Noting  that "it would be literally impossible" to accomplish such objectives without curtailments on the prisoners' right to privacy, id. at 527, the Supreme Court then went on to expressly hold that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell," id. at 526.  Further, "[b]ecause the need to watch prisoners closely is a legitimate institutional concern, a prisoner is entitled to little if any privacy, even when using the bathroom or taking a shower."  Sanders v. Kingston, 53 Fed. App'x 781, 784 (7th Cir. 2002).  As the Supreme Court noted:  "We  are satisfied that society would insist

3

that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security." Hudson, 468 U.S. at 528.[2]  This is true regardless of whether a prisoner is asserting a right to privacy under the Fourth Amendment or the Due Process Clause.  See Oliver, 276 F.3d at 744-45; Johnson v. Phelan, 69 F.3d 144, 145-47 (7th Cir. 1995).

In that prison officials clearly have the right to conduct visual surveillance to advance the needs and objectives of their facilities, their actions are not rendered impermissible simply because they employ video technology as a part of the surveillance program.  If prison officials have the right to view the inmates' actions in person, which they clearly do, then there is no logical reason to conclude that a different result follows if the officials instead view those actions on video equipment.  To the contrary, the use of video surveillance technology enhances the ability to provide greater internal security, in that it is less dependent on manpower, is consistently present to discourage prohibited behavior, and provides essentially irrefutable evidence if prohibited behavior takes place.  It appears that is in fact what troubles plaintiff, in that he complains that his disciplinary

---

[2]  Further, the Supreme Court noted that institutional security is not the only interest advanced by the curtailment of such rights:

> The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of institutional needs and objectives of prison facilities, chief among which is internal security.  Of course, these restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction.

Hudson, 468 U.S. at 524 (internal quotation marks and citations omitted); see also Willis v. Artuz, 301 F.3d 65, 69 (2nd Cir. 2002) ("One of the incidents of confinement for a convict is the loss of privacy, which serves the legitimate purpose of retribution as well as the institutional security needs of the prison system." ).

charges resulted from the fact that his actions were caught on videotape.  Accordingly, his own complaint establishes the very need for and legitimacy of the video surveillance program.

Lastly, to the extent that plaintiff requests that criminal charges be pressed against Warden Travis for violating the state criminal statute prohibiting video voyeurism, that request is absurd. In the first place, that statute prohibits the videotaping of a nonconsenting person "for a lewd or lascivious purpose."  La.Rev.Stat.Ann. § 14:283.  Video technology in prison is used for the legitimate surveillance of convicted criminals for security purposes, not for lewd or lascivious purposes.  Second, in any event, federal courts have no authority to institute state criminal prosecutions; such matters are solely within the purview of state law enforcement officials.

### Motion for a Temporary Restraining Order and/or a Preliminary Injunction

The Court notes that, in connection with this lawsuit, plaintiff has also filed a motion for a temporary restraining order and/or a preliminary injunction.[3]  Because the relief he seeks would extend beyond the ten-day limit of a temporary restraining order, his motion must be construed solely as one for a preliminary injunction.  Neal v. Federal Bureau of Prisons, 76 Fed. App'x 543, 545 (5th Cir. 2003).

Under the law of this Circuit, plaintiff must make a clear showing that his case satisfies the following four criteria before he can receive a preliminary injunction: (1) a substantial likelihood exists that plaintiff will succeed on the merits of his claim; (2) a substantial threat of irreparable harm exists if the injunction is not granted; (3) the threatened injury outweighs any harm to the defendants if the injunction is granted; and (4) the injunction will not undermine the public interest. See Valley v. Rapides Parish School Board, 118 F.3d 1047, 1051 (5th Cir. 1997); see also

---

[3] Rec. Doc. 4.

Ingebresten v. Jackson Public School District, 88 F.3d 274, 278 (5th Cir. 1996); Doe v. Duncanville Independent School Dist., 994 F.2d 160, 163 (5th Cir. 1993); Holland American Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985).  The movant must satisfy all four factors; a failure to satisfy even one of the four factors requires a denial of the preliminary injunction.  See Mississippi Power & Light v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

For the reasons set forth in this opinion, there is no likelihood that plaintiff will succeed on the merits of his claims in this lawsuit.  Accordingly, plaintiff's motion should be denied.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

It is **FURTHER RECOMMENDED** that plaintiff's "Motion for a Temporary Restraining Order and/or a Preliminary Injunction," Rec. Doc. 4, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this tenth day of April, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**